# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MARK BOWERS,                  )
                                   )

       Plaintiff,            )
                                   )

       vs.                 )          Case No. 4:14-cv-01185-JAR
                                   )

DAVID A. MULLEN, et al.,     )
                                   )

       Defendants.       )
                                   )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 36). Plaintiff submitted a response in opposition to Plaintiffs' Motion for Summary Judgment with supporting exhibits (Doc. 41 & Attach.). Defendants filed their reply (Docs. 42-43). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted.

## I. Background

On June 30, 2014, Bowers, a Missouri inmate, filed this action under 42 U.S.C. § 1983 (Doc. 1.) His verified complaint, as amended, seeks damages against Defendants David Mullen, a physician at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC"); John Williams, a physician at the Missouri Eastern Correctional facility ("MECC"); Karl Hardman, the Health Services Administrator at the Tipton Correctional Center ("TCC"); and T. Bredeman, the Medical Director for Corizon Medical Services (Am. Comp. (Doc. 5) at 5, 14). Bowers initially alleged that all Defendants had, with deliberate indifference, provided him constitutionally inadequate medical care for osteoarthritis in his left hip; he has since conceded his claims against Drs. Mullen, Williams, and Hardman, leaving only his claim against Dr. Bredeman (Id. at 8; Docs. 41, 41.1).

The summary judgment evidence establishes the following. Before he was imprisoned, Bowers suffered a lower back injury for which he had undergone surgery; he had also suffered a gunshot wound to his lower left leg (Doc. 38.1 at 3, 15). In January 2009, while he was incarcerated at ERDCC, Bowers presented to Dr. Mullen, complaining of, inter alia, chronic left hip and knee pain. Dr. Mullen prescribed Bowers shoe inserts, and gabapentin and amitriptyline for his pain (Doc. 38.1 at 3). In March 2009, Bowers told a nurse practitioner that he had pain and discomfort in his hip, knee, and ankle (Id. at 4-5). The nurse practitioner noted that Bowers was favoring his left leg when he walked, and that he had equal strength in leg pushes and pulls. The nurse observed no deformities, and referred Bowers to the chronic pain clinic where his medications were renewed (Id. at 5-6).

In April 2009, Dr. Mullen examined Bowers, renewed his gabapentin prescription, and gave him a new prescription for naproxen (Id. at 9). Dr. Mullen also ordered an x-ray which revealed "moderately advanced degenerative changes of the hips" which had progressed slightly when compared to an x-ray of Bowers's hips taken in February 2008 (Id.). During an August 2009 follow-up appointment at the ERDCC chronic pain clinic, Bowers rated his pain as a five on a scale of one to ten; reported that he had increased pain with bending, stooping, or standing for too long; and stated that his pain prevented him from sleeping (Id. at 11). Dr. Mullen renewed Bowers's gabapentin prescription in October 2009 (Id. at 13). At a December 2009 follow-up appointment, Bowers was prescribed meloxicam for his knee and hip pain; his gabapentin was also renewed (Id. at 15-17). Dr. Mullen refilled Bowers's gabapentin prescription again in April 2010 (Id. at 21).

In June 2010, Bowers self-declared a medical emergency, claiming that he needed an x-ray to determine whether his "degenerative joint problems" had worsened (Id. at 22). He reported

sharp throbbing pain in his left hip and knee, that his pain medications were not helping, that he could barely put on his pants without falling, that he slept in his pants and socks because it hurt too much to take them off, and that he could not raise his leg because of the pain (Id. at 22-23). Dr. Mullen examined Bowers, renewed his meloxicam prescription, and ordered an x-ray of his knee, which did not reveal arthritic changes (Id. at 24-26). Bowers was treated primarily for his knee pain until October 2010 (Id. at 32-36).

In January 2011, Bowers requested surgery on his left hip and right knee (Id. at 37). Dr. Mullen renewed Bowers's existing pain medications, and added prescriptions for acetaminophen and an analgesic balm (Id. at 38). In March 2011, Bowers again complained of hip pain that prevented him from putting on his socks or tying his shoes (Id.). Dr. Mullen prescribed meloxicam, and referred Bowers for an orthopedic consult (Id. at 38-39). Dr. Mullen noted that Bowers had reported chronic pain in his left hip, that x-rays had revealed moderate to severe degenerative changes in his hip, that he had difficulty walking and secondary pain in his right knee related to his abnormal gait, that his pain was interfering with his activities of daily life, and that conservative treatments had been unsuccessful (Id. at 39). An April 2011 x-ray of Bowers's left hip showed moderate degenerative changes and "bony sclerosis with loss of joint space narrowing superiorly" (Id. at 41). An MRI was then ordered "to evaluate for avascular necrosis of [the] femoral head"; however, the MRI was cancelled when the technician realized Bowers had bullet fragments in his leg (Id. at 44, 47; Doc. 41.3 at 4). In August 2011, a CT-scan revealed "advanced osteoarthritis of [Bowers's] left hip without avascular necrosis or fracture" (Docs. 38.1 at 47; 41.3 at 5).

Less than two weeks later, Bowers was transferred to MECC, where he was referred to the chronic care clinic (Id. at 49). During his September 1, 2011 chronic-care intake examination,

Bowers reported, inter alia, a history of arthritis in his left hip and back surgery. He also stated that he had been riding bicycles and trying to work out (Id. at 54-56). A nurse noted that Bowers ambulated with a limp and had trouble getting in and out of a chair (Id. at 55-56). Bowers was prescribed meloxicam and aspirin for pain (Id. at 55-56).

On September 10, 2011, Bowers was examined by Dr. Justin Cutler (Id. at 57). Dr. Cutler observed that Bowers walked with only a minor antalgic gait, stood with a mild flexion at his waist, and was only able to flex his hip forty-five degrees (Id. at 57-58). He reviewed Bowers's x-rays and CT-scan, concluding that Bowers had severe joint space narrowing consisted with severe osteoarthritis in his left hip (Id. at 58). Dr. Cutler recommended treatment with pain medications, which Bowers refused, and discussed the option of fluoroscopic guided hip injections (Id.). Bowers requested and was provided a cane. Dr. Cutler advised Bowers to walk the prison track and to ride a stationary bike on a daily basis, and to avoid stairs. He also informed Bowers that he would likely need a total hip arthroplasty in the future to treat his pain (Id.). During a September 29, 2011 chronic care follow up appointment, Bowers stated that he wanted left hip replacement surgery, rated his left hip pain as a ten on a scale of one to ten, and noted that he was pleased that he had recently lost weight. He also reported that he had been walking approximately one mile around the prison track and riding a stationary bicycle, but that he experienced left hip pain after exercising (Id. at 60). In November 2011, Dr. Williams discontinued Bowers's meloxicam prescription—at Bowers's request—and replaced it with acetaminophen (Id. at 63).

During a December 2011 follow-up appointment, Bowers returned his cane to the MECC medical department, reporting that he no longer needed it, that he was attempting to control his pain with medication, and that he had some left hip discomfort that radiated to his groin and left

thigh (Doc. 38.2 at 2-3). Dr. Williams recommended that Bowers continue to ambulate as much as he could, and take acetaminophen as needed for his pain (Id. at 3). In March 2012, Bowers again complained of hip pain, but refused pain medication (Id. at 6-8).

Bowers next complained of hip pain on July 9, 2012, and Dr. Williams prescribed Bowers indomethacin for his pain (Id. at 10). The prescription was cancelled on August 3, 2012, after Bowers failed to take it for ten days (Id. at 11). On August 29, 2012, Dr. Williams requested that Bowers be referred back to the orthopedic specialist for reevaluation of his left hip (Id. at 15). In support of his request, Dr. Williams noted that x-rays and a CT-scan of Bowers's left hip taken the year prior had revealed degenerative joint disease, that his hip pain had persisted despite use of a cane and modifications to his daily activities of living, that he was unable to bend to tie his shoes, and that he had little extension, no eversion, and painful inversion of his left hip (Id.).

On August 30, 2012, Dr. Bredeman denied the referral request, concluding that a medical need for the referral had not been established. He instead concluded that Dr. Williams should follow up with Bowers, optimize pain management, encourage him to use a cane, and consider physical therapy and Velcro shoes (Id.). Dr. Williams then requested a physical therapy evaluation and Velcro shoes for Bowers, both of which Dr. Bredeman approved (Id. at 16-17). In late September 2012, Bowers injured his rib cage while speed walking on a treadmill, and was prescribed ibuprofen (Id. at 17-18). Bowers was transported to a September 26, 2012 physical therapy session, and a physical therapist provided him a home exercise plan. On October 9, 2012, Dr. Williams refilled Bowers's indomethacin prescription (Id. at 19-20).

On October 12, 2012, Bowers submitted a medical services request, complaining of pain in his upper back (Id. at 21). A nurse responded, and Bowers informed her that he had injured

himself doing sit-ups with "too much weight on it" (Id.). The nurse encouraged Bowers to modify his exercise routine, and prescribed him ibuprofen (Id. at 22). During an October 15, 2012 follow-up appointment, Bowers complained of left hip pain, but was able to ambulate without using a cane. Dr. Williams advised Bowers to continue with the home exercise plan his physical therapist had provided (Id. at 22-23). Dr. Williams saw Bowers again on October 26, 2012; Bowers stated that he continued to experience hip pain, especially after exercising, but told Dr. Williams that he had not been taking his indomethacin prescription (Id. at 23). In December 2012, Dr. Williams replaced Bowers's indomethacin prescription with a prescription for acetaminophen, after Bowers claimed that the indomethacin was not helping with his pain (Id. at 26-27). In February 2013, Bowers complained to nurse in the chronic care clinic about pain in his left hip, but stated that he was not taking any medications for the pain. According to Bowers, he was not experiencing pain when sitting, he had pain a level of ten when he moved, and he experienced aching and throbbing when he was recumbent (Id. at 28-29). Dr. Williams examined Bowers, and recommended that he continue with the chronic care clinic (Id. at 30).

Bowers was transferred to TCC in March 2013 (Id. at 32). A July 2013 x-ray again showed degenerative changes of both hips (Id. at 42). At that time, Bowers was able to walk with a steady gait and without assistance (Id. at 44). On September 12, 2013, Bowers complained that his hip pain had worsened and that his pain medications were no longer helping (Id. at 45). X-rays showed significant degenerative changes involving Bowers's left hip with bone-to-bone contact at the superolateral margin (Id. at 46-47). A physician requested an orthopedic consult, and Dr. Bredeman approved the request on November 11, 2016 (Id. at 48). In late-November 2013, the orthopedic specialist requested approval for total left hip replacement surgery (Id. at

50; Doc. 41.3 at 7-8). Dr. Bredeman approved the request the same day, and Bowers underwent successful total hip replacement surgery in April 2013 (Doc. 38.2 at 50).

## II. <u>Summary Judgment Standard</u>

The Court may grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Peterson v. Kopp</u>, 754 F.3d 594, 598 (8th Cir. 2014). A moving party bears the burden of informing the Court of the basis of its motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. <u>Celotex</u>, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)).

## III. <u>Deliberate Indifference Standard</u>

Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>Nelson v. Corr. Med. Servs.</u>, 583 F.3d 522, 531-32 (8th Cir. 2009) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)). To establish deliberate indifference, Bowers "must prove an objectively serious medical need and that prison

officials knew of the need but deliberately disregarded it." Id. The second prong of the deliberate-indifference test requires Bowers to show that Defendants were more than negligent, or even grossly negligent; he must show that their mental state was "akin to criminal recklessness." Allard v. Baldwin, 779 F.3d 768, 771-72 (8th Cir. 2015).

A complaint that a prison physician has been negligent in diagnosing or treating a medical condition does not give rise to a claim under the Eighth Amendment. Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Id. Rather, to establish an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must bring forth evidence of sufficiently harmful acts or omissions. Id. Deliberate indifference entails a level of culpability akin to criminal recklessness, i.e., that the official was both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that the official actually drew the inference. McRaven v. Sanders, 577 F.3d 974, 982-83 (8th Cir. 2009). Prison physicians remain free to exercise their independent medical judgment. Meuir v. Greene Cnty. Jail Emps., 487 F.3d 1115, 1118-19 (8th Cir. 2007). Differences of opinion over issues of medical judgment or the proper course of treatment, even among physicians, do not give rise to a constitutional violation. Id.; Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995).

When a prisoner-plaintiff's deliberate-indifference claim is based on a delay in medical treatment, the Court must measure the objective seriousness of the deprivation by reference to the effect of the delay. Jackson v. Riebold, 815 F.3d 1114, 1119-20 (8th Cir. 2016). The plaintiff must produce verifying medical evidence that establishes the detrimental effect of the delay. Id. Where an inmate submits evidence documenting his diagnosis and treatment, but offers no

evidence establishing that any delay in treatment had a detrimental effect on his prognosis, the inmate fails to raise a genuine issue of fact on an essential element of his claim. Id.

## IV. Discussion

Defendants argue that they are entitled to summary judgment because they were not deliberately indifferent to Bowers's medical needs. More specifically, they argue that they provided Bowers continuous care for his osteoarthritis, and that Bowers has not produced any verifying medical evidence of a detrimental effect caused by any delay in treatment (Docs. 37, 42). In response, Bowers concedes that Drs. Hardman, Williams, and Mullen provided him constitutionally adequate medical care. He persists however in his claim that Dr. Bredeman was deliberately indifferent to his serious medical needs when he denied Dr. Williams's August 2012 request for an orthopedic consultation even though x-rays showed that his hip condition had deteriorated since his last referral (Docs. 41, 41.1). For the following reasons, the Court concludes that Dr. Bredeman is entitled to judgment as a matter of law.

Construing the evidence and all reasonable inferences in Bowers's favor, Celotex, 477 U.S. at 331, the Court concludes that Dr. Bredeman was not deliberately indifferent to Bower's serious medical needs when he denied Dr. William's request for an orthopedic consultation, Allard, 779 F.3d at 771-72. The Court notes that Dr. Williams's August 2012 request for the orthopedic referral was made shortly after Bowers complained of hip pain for the first time in more than four months. Notably, Bowers had realized significant improvement in his hip pain in late 2011, after a course of conservative treatment which included weight loss, participation in an exercise regimen, and compliance with his pain medications. In addition, Bowers had refused pain medication in March 2012, and failed to take another prescription for pain medication after his July 2012 pain complaint. The Court further notes that in the months following Dr.

Bredeman's denial of the orthopedic referral, Bowers was able to continue with vigorous exercises involving his hip, including speed walking and weighted sit ups. Given Bowers's prior success with conservative treatment and pain management, as well as his poor compliance with recommended treatments when his pain returned, the Court concludes that Dr. Bredeman was not deliberately indifferent to Bowers's hip condition when he denied Dr. Williams's request for an orthopedic referral, and instead opted for a continued course of conservative treatment. Vaughan, 49 F.3d at 1346 (differences of opinion, even among physicians, over proper course of treatment for inmate's medical needs do not give rise to constitutional claim); cf. Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001) (mere negligence does not support constitutional violation).

Moreover, the Court concludes that Dr. Bredeman is entitled to summary judgment because Bowers has adduced no verifying medical evidence that any delay in his referral to an orthopedic specialist detrimentally affected his prognosis. See Jackson, 815 F.3d at 1119-20; see also Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (affirming grant of summary judgment where prisoner based claim on treatment delays but did not place verifying medical evidence in the record to establish detrimental effect of delay).

Finally, to the extent that Bowers claims that Dr. Bredeman's denial of the referral request caused him to suffer needless pain, the Court concludes that no reasonable jury could find that Dr. Bredeman was deliberately indifferent to Bowers's pain complaints. Id.; see Dadd v. Anoka Cnty., No. 15-2482, 2016 WL 3563424, at 3-5 (8th Cir. June 30, 2016) (discussing claims of deliberate indifference to pain). The summary judgment record shows that Bowers was consistently prescribed medications when he complained of pain, and nothing in the record indicates that Dr. Bredeman interfered with Bowers's access to pain medication. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (to prevail in § 1983 claim, plaintiff must establish

that defendant was personally involved in constitutional violation). The Court thus concludes that Dr. Bredeman has shown, beyond genuine dispute, that he was not deliberately indifferent to the osteoarthritis in Bowers's hip when he denied Dr. Williams's August 2012 referral request; and that Dr. Bredeman is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.

**V.  Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 36) is **GRANTED**. A separate judgment will accompany this order.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of August, 2016.